DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Wood County Court of Common Pleas after a jury found defendant-appellant, Ruben Reyes, guilty of one count of possession of marijuana and one count of possession of cocaine. From that judgment, appellant raises the following assignments of error:
 {¶ 2} "I. First Assignment of Error
 {¶ 3} "The conviction of appellant on the charge of possession of marijuana should be overturned because the evidence before the court was insufficient to prove that appellant was in possession of the marijuana.
 {¶ 4} "II. Second Assignment of Error
 {¶ 5} "The convictions of appellant should be reversed because the trial court violated appellant's right to confront and cross examine witnesses in violation of constitutional guarantees.
 {¶ 6} "III. Third Assignment of Error
 {¶ 7} "The conviction of appellant on all charges should be reversed owing to the admission of `other acts' testimony."
 {¶ 8} On July 3, 2002, appellant was indicted and charged with one count of possession of marijuana in an amount that equals or exceeds 20,000 grams in violation of R.C. 2925.11(A) and (C)(3)(f) and one count of possession of cocaine in an amount that equals or exceeds 25 grams but is less than 100 grams that is not crack cocaine, in violation of R.C. 2925.11(A) and (C)(4)(c). The charges were the result of a reverse buy operation conducted by members of the Wood County Sheriff's Office and the Drug Enforcement Administration, a division of the Ohio Attorney General's Office, Bureau of Criminal Investigation ("DEA task force"). The facts of the case as testified to at the trial below are as follows.
 {¶ 9} In early May 2002, Juan Ramirez contacted members of the Hancock County Metro Drug Task Force and provided them with information regarding drug trafficking in the Toledo-Lucas County and Wood County areas. After Ramirez indicated his willingness to work as a confidential informant, Officer Harry Neff of the Hancock County Sheriff's Office put him in touch with Agents Kip Lewton and Michael Ackley of the DEA task force in Toledo. After meeting with Ramirez, the agents learned that appellant was looking for someone, a "mule," to go to the state of Washington to pick up cocaine and return it to appellant. The agents then concocted a plan in which Ramirez would introduce appellant to undercover officer Mickey Gyurko, who would pose as a "mule" and a drug dealer.
 {¶ 10} On May 28, 2002, at approximately 7:30 p.m., Gyurko met Ramirez and appellant in the parking lot of a Meijer store in Wood County. Because the meeting was prearranged, agents with the DEA task force were able to set up a surveillance camera and videotape the meeting, although the audio portion of the recording malfunctioned. That video and Agent Gyurko's testimony at the trial below revealed the following. Gyurko was the first to arrive at the meeting site. Subsequently, Ramirez and appellant arrived in Ramirez' car with Ramirez driving and appellant sitting in the front passenger's seat. Gyurko then climbed into the back seat of Ramirez' car and Ramirez introduced him to appellant. The men then discussed the details of the job and negotiated a price. Gyurko agreed to go to Seattle to pick up three kilograms of cocaine in exchange for bus fare, food and approximately $1,500 per kilogram. During the course of their conversation, Gyurko told appellant that he had 100 pounds of marijuana for sale and that he wanted $650 per pound for it. Appellant indicated that that was a good price but he was concerned about getting that much money up front to pay for it. Gyurko indicated that he would be willing to front the marijuana and give appellant two weeks to sell it before expecting payment. Gyurko testified that appellant's only concern was whether he would have enough time to sell the marijuana not whether he actually wanted it. The men ended their conversation with appellant stating that he had to contact his supplier.
 {¶ 11} Over the next several days, Gyurko and Ramirez, either together or separately, contacted appellant by telephone about Gyurko's trip and appellant's potential purchase of marijuana from Gyurko. On May 29, 2002, Gyurko and Ramirez telephoned appellant together. During that conversation, Gyurko asked appellant if he still wanted the marijuana. Gyurko also told appellant that he had already sold 25 pounds of it so that he only had 75 pounds left. Appellant indicated that he was still interested in the marijuana but again was concerned about when he would be able to pay Gyurko. Appellant also indicated that he already had a buyer for 10 pounds but that he needed to confirm that plan. The men then agreed to talk later that day. Later that day, Gyurko telephoned appellant without Ramirez being present. A tape recording of this conversation was played for the jury at the trial below. During this conversation, appellant expressed concern that Ramirez was not a party to the conversation and then indicated that he did not want the marijuana.
 {¶ 12} Thereafter, on May 31, 2002, appellant and Ramirez spoke by telephone. That conversation was recorded and again the recording was played for the jury at the trial below. During that conversation, Ramirez asked appellant if he still wanted the marijuana. Initially, appellant responded that he did not want the marijuana because he did not know Gyurko, but as the conversation progressed, appellant asked Ramirez about the quality of the marijuana and indicated that he would rather obtain it from Ramirez. Ramirez told appellant that Gyurko had sold another 25 pounds of it and that he only had 50 pounds left but stated that he would talk to Gyurko to see if he could get more. As the conversation ended, appellant indicated that he wanted to check out the marijuana and Ramirez stated that he would contact Gyurko.
 {¶ 13} On June 3, 2002, at approximately 10:45 a.m., Ramirez telephoned appellant while Agent Ackley listened in. In addition, that conversation was recorded and played for the jury. In that conversation, Ramirez attempted to arrange a meeting between himself, appellant and Gyurko in a truck stop parking lot to make the transfer of the marijuana, but appellant was adamant that the transfer not take place in Wood County. Ramirez also informed appellant that Gyurko had told him that he now had 60 pounds of marijuana available to sell them. Appellant seemed fine with the amount but wanted the transfer to take place "up here" as opposed to Wood County. Ramirez then mentioned a motel in Walbridge, which was also in Wood County, as a possible transfer site. Ramirez and appellant agreed to speak later that day.
 {¶ 14} The agents then arranged for video and audio surveillance of the proposed transfer site, a Comfort Inn in Wood County. The plan was to arrest appellant after the transaction was completed. At approximately 2:00 p.m., Agent Gyurko, posing as the drug dealer previously introduced to appellant by Ramirez, arrived at the parking lot of the Comfort Inn to await Ramirez and appellant. Ramirez and appellant arrived about 10 minutes later, with Ramirez driving and appellant sitting in the front passenger's seat. Ramirez parked next to Gyurko. Ramirez and Gyurko then exited their vehicles and walked to the rear of those vehicles in order to complete the transfer. During their discussions, Ramirez indicated that appellant wanted to trade cocaine as partial payment for the marijuana. Appellant, however, stayed in the car and seemed nervous. Ramirez then got back into the car so that Gyurko could speak to him and appellant. During that discussion, appellant made it clear that he was nervous about being in Wood County and that he wanted to make the transfer elsewhere. The group then agreed to drive away from their current location with Gyurko following Ramirez and appellant. Because of this change in location, DEA agents were not able to set up video and audio surveillance in time to record the following events.
 {¶ 15} Ramirez and appellant then entered a U-Do-It Car Wash, which was still in Wood County. They pulled into a stall and Gyurko pulled in to an adjacent stall. Gyurko testified as to the events that followed. After they arrived at the car wash, Ramirez, appellant and Gyurko exited their vehicles and walked to the rear of the cars. Gyurko then told appellant that the price of the marijuana had gone up to $700 per pound because he had obtained a better quality product and appellant agreed to that price. They then walked to Gyurko's vehicle and Gyurko removed a blue duffle bag from his front seat. He placed the bag into the trunk of Ramirez' car, unzipped the bag and cut open a brick of marijuana to show to appellant. Upon seeing the marijuana, appellant commented: "It's green. That's how they like it." Appellant, however, never touched the bag. Appellant and Gyurko then began to talk about Gyurko traveling to Seattle to pick up the cocaine when the arrest team came in, secured the scene and arrested appellant.
 {¶ 16} After appellant was arrested, he indicated that he wanted to cooperate. He was then given Miranda warnings. Subsequently, a search of Ramirez' vehicle revealed a coat which appellant admitted was his. Upon searching that coat, agents discovered one ounce of cocaine which appellant also admitted was his. Appellant then began to direct the agent's attention to the source of the cocaine but thereafter indicated that he no longer wanted to cooperate.
 {¶ 17} Upon reviewing the above testimony and evidence, the jury returned guilty verdicts on both counts of the indictment. Thereafter, the court sentenced appellant to eight years incarceration on the possession of marijuana conviction and four years incarceration on the possession of cocaine conviction, with the sentences to run concurrently. It is from that conviction and sentence that appellant now appeals.
 {¶ 18} In his first assignment of error, appellant asserts that his conviction on the charge of possession of marijuana must be overturned because there was insufficient evidence presented at the trial below to support a finding that he was ever in possession of marijuana. In particular, appellant contends that because he never touched the marijuana and because he was never in a position to exert any control over it, because the police would have prevented him from doing so, he was never in "possession" as that word is used in R.C. 2925.11
 {¶ 19} The phrase "sufficiency of the evidence" raises a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 20} Appellant was convicted of possession of marijuana in violation of R.C. 2925.11, which provides that no person shall knowingly obtain, possess, or use a controlled substance, including marijuana. The term "possession" is defined in R.C.2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be constructive or actual. Constructive possession is shown when a person "knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession."State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. See, also, State v. Wolery (1976), 46 Ohio St.2d 316, 329, andState v. Haynes (1971), 25 Ohio St.2d 264, 269-270. While close proximity to contraband is insufficient alone to prove constructive possession, it can be used as circumstantial evidence to establish constructive possession. State v. Chapman
(1992), 73 Ohio App.3d 132, 138, and State v. Slater (June 30, 1993), Sandusky App. No. S-92-33. Whether a defendant knowingly possessed a controlled substance is a question of fact for the trier of fact. State v. Jones (Jan. 10, 1990), Hamilton App. No. C-880620.
 {¶ 21} Upon a review of the record below, we conclude that there was sufficient evidence to support a finding that appellant was in "possession" of marijuana as that term is used in the statute. Although appellant never physically touched the contraband or its container, the facts demonstrate that he negotiated its delivery, agreed to an increase in the price, arrived at the designated transfer location with the confidential informant, changed the transfer location because he did not want to be in Wood County, stood by the trunk of the confidential informant's car as Gyurko placed the contraband in the trunk and commented on the quality of it when Gyurko opened a package. These facts, taken together, support a finding that appellant took delivery of the contraband and knowingly exercised dominion and control over it, if only for a short time. The first assignment of error is not well taken.
 {¶ 22} In his second assignment of error, appellant challenges the trial court's ruling preventing him from cross-examining Agent Gyurko on alleged inconsistent statements he made at a preliminary hearing in the proceedings below. This assignment of error addresses the following situation which occurred during appellant's trial counsel's cross-examination of Agent Gyurko at the trial below.
 {¶ 23} "Q. So that I'm clear, at the car wash on the 3rd, you testified that you took the bag out of your Mustang?
 {¶ 24} "A. Correct.
 {¶ 25} "Q. Did you ask anyone else to do it before you lifted it out?
 {¶ 26} "A. No, I didn't.
 {¶ 27} "Q. Did you suggest that Mr. Reyes take the bag and place it into the trunk?
 {¶ 28} "A. No.
 {¶ 29} "Q. Do you recall testifying at the preliminary hearing on this matter?
 {¶ 30} "A. Yes.
 {¶ 31} "Q. If I were to say —
 {¶ 32} "MR. BISHOP: Objection. 16(B)(1)(g) is being violated here.
 {¶ 33} "THE COURT: Gentlemen, why don't we meet over here.
 {¶ 34} "(Side Bar Discussion)
 {¶ 35} "MR. BISHOP: 16(B)(1)(g) clearly requires there be an in-camera inspection of prior statements of the witness before he can be cross-examined thereon. Counsel is blatantly trying to drag that out in front of the jury without following the rule.
 {¶ 36} "MR. SKAFF: Well, I didn't get to finish my question. I was simply going to ask him if he recalled making that statement.
 {¶ 37} "MR. BISHOP: That's —
 {¶ 38} "MR. SKAFF: I'm not confirming any testimony. I'm asking if he testified; and if he did, does he recall saying anything.
 {¶ 39} "MR. BISHOP: That's insidious. You're not allowed to cross-examine prior statements until there's an in-camera inspection of that statement to determine if there are any inconsistencies. Counsel is trying to circumvent the rule to his advantage, and it's unfair and prejudicial.
 {¶ 40} "MR. SKAFF: Your Honor, the statement was under oath. I'm not asking to confirm or deny the truth of the statement. I'm asking if he remembers making the statement.
 {¶ 41} "MR. BISHOP: I know what you're doing.
 {¶ 42} "THE COURT: Your question is inappropriate.
 {¶ 43} "MR. SKAFF: Okay."
 {¶ 44} The court then granted the state's request to strike defense counsel's last question and the partial answer to it. Defense counsel then continued his cross-examination of Agent Gyurko.
 {¶ 45} The decision to admit extrinsic evidence of prior inconsistent statements relative to a witness' credibility is a matter left to the sound discretion of the trial judge, State v.Soke (1995), 105 Ohio App.3d 226, 239, and "the court retains discretion to determine whether claimed differences between prior statements and trial testimony are material inconsistencies."State v. York (Oct. 24, 1985), Cuyahoga App. No. 49952.
 {¶ 46} Appellant asserts that the court should have allowed him to cross-examine Gyurko on an alleged prior inconsistent statement pursuant to Evid.R. 801(D). That rule provides: "A statement is not hearsay if: (1) * * * The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *." Appellant contends that because Agent Gyurko's testimony at the preliminary hearing was inconsistent with his testimony at the trial below, appellant was entitled to cross-examine him regarding that prior statement. The state counters that Crim.R. 16(B)(1)(g) provides a prerequisite to such a cross-examination and that because appellant failed to follow that rule, he cannot now challenge the trial court's ruling.
 {¶ 47} Crim.R. 16(B)(1)(g) provides in relevant part: "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement. If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies. If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon."
 {¶ 48} Accordingly, the issue raised by this assignment of error is whether the testimony from a preliminary hearing is considered a "recorded statement" as envisioned by Crim.R. 16(B)(1)(g). For the following reasons, we find that it is not.
 {¶ 49} Crim.R. 16 is, by its very title and nature, a discovery rule. Subsection (B) of that rule sets forth in each of its subparts all of the information that the prosecuting attorney is required to reveal to the defense. In paragraphs (1)(a) through (f), the rule identifies the information which the prosecuting attorney is required to reveal to the defense, upon a request by the defense, prior to trial. Included in this list is "recorded testimony of the defendant or co-defendant before a grand jury," Crim.R. 16(B)(1)(a)(iii), and the "testimony" of a state's witness under the circumstances described in Crim.R. 16(B)(1)(e). Crim.R. 16(B)(1)(g) does not use the term "testimony," but rather uses the term "recorded statement." By their use of the term "testimony" in one part of the rule and use of the term "recorded statement" in Crim.R. 16(B)(1)(g), the drafters of the Criminal Rules necessarily excluded "testimony" from the application of Crim.R. 16(B)(1)(g).
 {¶ 50} A preliminary hearing is "a formal proceeding in which testimony is taken in a judicial atmosphere." State v.
Arrington (1975), 42 Ohio St.2d 114, 118. Both the Ohio Supreme Court and the United States Supreme Court have recognized the importance of a transcript of a preliminary hearing to a defendant. In Arrington, the Supreme Court of Ohio held that the denial of the defendant's motion for the preliminary hearing transcript was prejudicial error. Similarly, in Roberts v.LaVallee (1967), 389 U.S. 40, the United States Supreme Court vacated judgment in the case of a defendant who was denied a free record of a preliminary hearing. In State v. Peterson (1976),46 Ohio St.2d 425, 434, the Supreme Court of Ohio stated that Crim.R. 16(B)(1)(g) "by its terms, includes any written or recorded prior statement within the possession of the prosecuting attorney, including the testimony of a witness at a prior trial." Testimony from a preliminary hearing, however, is not information that is in the exclusive possession of the prosecutor. That is, it is information to which the defendant is constitutionally entitled absent any interest of the prosecutor. As such, it is not a statement subject to the requirements of Crim.R. 16(B)(1)(g). Nevertheless, it is incumbent upon a defendant's counsel to obtain a copy of a transcript of a preliminary hearing for use at trial or for purposes of appeal.
 {¶ 51} Evid.R. 613(B) sets forth the procedure to be followed by a party seeking to impeach a witness by his prior inconsistent statements. That rule provides: "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply: (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require; (2) The subject matter of the statement is one of the following: (a) A fact that is of consequence to the determination of the action other than the credibility of a witness * * *." Accordingly, a witness' prior inconsistent statement made at a preliminary hearing is admissible as impeachment evidence if the mandates of Evid.R. 613(B) are followed. "When extrinsic evidence of a prior inconsistent statement * * * is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." State v. Theuring (1988),46 Ohio App.3d 152, 155.
 {¶ 52} In the present case, the trial court refused to allow appellant's counsel to cross-examine Agent Gyurko on an alleged prior inconsistent statement made at the preliminary hearing because appellant failed to request an in camera inspection of the testimony prior to the cross-examination. In our view, and for the reasons stated above, the in camera inspection requirement of Crim.R. 16(B)(1)(g) does not apply to testimony from a preliminary hearing and the lower court erred in that regard. The court also prevented appellant's trial counsel from laying the proper foundation for admission of the preliminary hearing testimony under Evid.R. 613(B). Nevertheless we must further conclude that appellant's trial counsel failed to preserve this error for purposes of appeal. That is, no copy of a transcript from the preliminary hearing was ever proffered into evidence for purposes of appellate review. Accordingly, we cannot determine whether any inconsistencies exist in Agent Gyurko's testimony. Absent the preliminary hearing transcript, we must presume that the trial court's ruling denying the admissibility of the preliminary hearing testimony was otherwise proper. The second assignment of error is therefore not well-taken.
 {¶ 53} In his third assignment of error, appellant challenges various evidentiary rulings made by the court below. Appellant contends that the challenged testimony amounts to evidence of other bad acts which Evid.R. 404(B) prohibits.
 {¶ 54} It is well-established that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. This court, therefore, will not reverse a trial court's ruling regarding the admission or exclusion of evidence unless the trial court abused its discretion. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 55} Appellant first challenges the admission of testimony by Agent Ackley as to why he remained out of site at the scene of appellant's arrest. In response to the state's question as to what he observed taking place at the car wash, Ackley stated: "All I did at that point was I stayed back, being Ruben knew me and I knew Ruben. If my face was seen, I'm sure it was over at that point. So I stayed back far enough where Ruben couldn't see me; and when Mickey gave the signal to take down, we took down." Appellant's trial counsel objected to the testimony which objection was overruled. Appellant asserts that the testimony was improper evidence of prior bad acts in that the jury could conclude from it that appellant and Ackley knew each other because appellant had been involved in illegal drug activity in the past.
 {¶ 56} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In his testimony below, Ackley did not state how appellant would have known him. All that can be gleaned from this testimony is that somehow, appellant knew Ackley was a police officer. Moreover, the testimony was not admitted to establish appellant's character but was simply part of Ackley's testimony regarding his actions on the day of appellant's arrest. We cannot say that the trial court abused its discretion in admitting this testimony.
 {¶ 57} Appellant next challenges the admission of testimony by Agent Gyurko that a phone call was placed to appellant while appellant was at the probation office. Again, appellant asserts that this was evidence of other crimes, wrongs or acts. Appellant's trial counsel, however, did not object to this testimony at the trial below. Accordingly, he has waived the right to challenge the ruling on appeal. Evid.R. 103(A).
 {¶ 58} Appellant further challenges the admission of Agent Gyurko's statements in which he referred to appellant as a "bad guy" and explained that no one was hurt when appellant was arrested, "good guys or Mr. Reyes." Again, appellant's trial counsel failed to object to this testimony and as such waived the right to challenge it on appeal.
 {¶ 59} Finally, appellant challenges the trial court's ruling on his objection to Agent Gyurko's testimony on direct examination regarding whether he obtained the mandatory approval of the prosecuting attorney to conduct a reverse buy operation. That testimony reads as follows:
 {¶ 60} "Q. Did you get permission from the prosecuting attorney in Wood County for this incident?
 {¶ 61} "A. Yes, we got the permission not only of Wood County, but also Lucas County due to the fact Mr. Reyes was very fearful of Wood County, and he didn't want to really do anything in Wood County. The first meeting was actually in Wood County, and he was very nervous and made statements to the confidential source he pretty much didn't want to go to Wood County because he got in trouble before, so he wanted to conduct everything in the Toledo area to make sure that — We were following the law. We got the permission to go to Lucas County from the prosecutor's office."
 {¶ 62} The lower court overruled appellant's objection to this testimony, finding that the reference to appellant's prior troubles was incidental and that it was inextricably related to the alleged drug transaction at issue. The Supreme Court of Ohio has previously held that Evid.R. 404(B) sets forth "an exception to the common law with respect to evidence of other acts of wrongdoing * * *. The rule * * * contemplate[s] acts which may or may not be similar to the crime at issue. If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible."State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. In our view, the testimony at issue was inextricably related to appellant's preparation or plan. In appellant's discussions with the confidential informant leading up to the reverse buy, which were recorded, appellant stated that he did not want to go anywhere in Wood County, "last time, remember?" In his challenged testimony, Agent Gyurko then referred to appellant's fears of Wood County to explain why he got permission from the prosecutors of both Wood and Lucas Counties to conduct the reverse buy. Under these circumstances we cannot say that the trial court erred in admitting this testimony.
 {¶ 63} Accordingly, the trial court did not err in admitting the challenged testimony and the third assignment of error is not well taken.
 {¶ 64} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Pietrykowski, J. concur.