[Cite as *State v. August*, 2019-Ohio-4126.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|                      |   |                               |
|----------------------|---|-------------------------------|
| STATE OF OHIO,       | : |                               |
| Appellee,            | : | CASE NO. CA2018-12-136        |
|                      | : | O P I N I O N                 |
| - vs -               |   | 10/7/2019                     |
|                      | : |                               |
| LENCY D. AUGUST,     | : |                               |
| Appellant.           | : |                               |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR33979

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Timothy J. McKenna, 125 East Court Street, Suite 950, Cincinnati, Ohio, 45202, for appellant

**PIPER, J.**

{¶ 1} Appellant, Lency D. August, appeals his conviction in the Warren County Court of Common Pleas for rape.

{¶ 2} In December 2016, a woman (the "victim") met appellant through an online dating website. The two eventually began living with each other in the victim's townhouse. The victim would drive appellant in her minivan to and from her townhouse to his two jobs.

On the night of February 22, 2017, the victim picked appellant up from one job to head home for a short break before driving him to his second job. At some point on this trip, the two began arguing and appellant repeatedly punched the victim in the head and about the body. As they neared her townhouse, appellant ordered her to drive to Walmart. Before they made it to Walmart, appellant changed his mind and commandeered the vehicle by grabbing the steering wheel and using his foot on the pedals. Appellant then drove the vehicle into the service entrance of a nearby shopping center. Appellant guided the vehicle behind the shopping center and eventually to the side of the Kohl's building where the vehicle was stopped. At this point, appellant demanded the victim perform fellatio. The victim, wary of being beaten again and in fear of her safety, complied. Subsequently, appellant ordered the victim to drive them back to her townhouse.

{¶ 3} After arriving at the victim's townhouse, appellant brandished a short-bladed craft knife and told the victim he would hurt her and her three children if she did not comply with him. The two went upstairs to her bedroom. Appellant closed the door and barricaded it with a nearby dresser. Appellant then ordered the victim to have vaginal intercourse with him. After the intercourse took place, the victim heard her seven-year-old daughter asking for help outside the door. Appellant moved the dresser and the victim attended to her daughter, closely supervised by appellant. The two then went back into the bedroom. Appellant again barricaded the door and commanded the victim again perform oral and vaginal intercourse with him.

{¶ 4} The next morning, appellant demanded the victim drive him to the bus station in Dayton. A few miles from the residence, appellant changed his mind and told the victim to drive back home because one of his family members had arranged for a taxi to pick him up at the townhouse. The two came back and waited until the taxi arrived. Appellant left in the taxi. A few hours after appellant's departure, the victim went to the Middletown police to

report the offenses and then to the hospital where a medical examination and rape kit collection were performed.

{¶ 5}   Based on the foregoing, in February 2018, a Warren County Grand Jury indicted appellant on five offenses: three counts of rape, all first-degree felonies in violation of R.C. 2907.02(A)(2); and two counts of kidnapping with sexual motivation specifications, both first-degree felonies in violation of R.C. 2905.01(A)(4) and 2941.147(A).  Appellant filed a pretrial motion to dismiss the indictment for preindictment delay.  After conducting a hearing on the matter, the trial court denied the motion.

{¶ 6}   The case proceeded to a jury trial in November 2018.  At the trial, the victim, the sexual assault nurse examiner, the investigating police detective, and two Ohio Bureau of Criminal Investigation ("BCI") laboratory analysts testified on behalf of the state.  Appellant presented testimony from the taxi company owner and a medical expert. At the conclusion of the trial, the jury found appellant guilty of the rape that occurred in the victim's vehicle and not guilty of the remaining charges which allegedly occurred later at the victim's residence.  At the end of November, the trial court sentenced appellant to a mandatory prison term of 10 years, designated him a Tier III sexual offender, and notified him of the requisite postrelease control conditions.

{¶ 7}   Appellant now appeals the conviction, raising five assignments of error for review.

{¶ 8}   Assignment of Error No. 1:

{¶ 9}   THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO DISMISS DUE TO PRE-INDICTMENT DELAY.

{¶ 10}   In the first assignment of error, appellant argues that the trial court violated his right to due process when it denied the motion to dismiss the indictment.  Appellant asserts that he suffered actual prejudice when the state waited more than a year from the date of the

- 3 -

offense to indict him.

{¶ 11} An unjustifiable delay between the commission of a criminal offense and an indictment for that offense that causes actual prejudice violates an accused's right to due process of law as provided by the United States and Ohio Constitutions. *State v. Luck*, 15 Ohio St.3d 150 (1984), paragraph two of the syllabus. Nevertheless, the primary protection against stale charges is the applicable statute of limitations. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044 (1977); *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, ¶ 11. In reviewing a claim of preindictment delay, the court engages in a burden-shifting framework. Initially, the accused bears the burden of establishing actual prejudice, then, the burden shifts to the state to provide evidence to justify the delay. *Jones* at ¶ 13.

{¶ 12} Actual prejudice is determined by the circumstances of the case and evidence is considered "as it exists when the indictment is filed" in relation to the prejudice the defendant will suffer at trial due to the delay. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 52. As explained by the Ohio Supreme Court,

> [a]ctual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense.

*Jones* at ¶ 28. The prejudice advanced must be more than merely speculative. *Id.* at ¶ 20; *See also State v. Heath*, 12th Dist. Warren No. CA96-04-035, 1997 Ohio App. LEXIS 351, at *5 (Feb. 3, 1997) (proof of actual prejudice must be specific, particularized and non-speculative). Appellant must show an exculpatory value of the alleged missing evidence in establishing actual prejudice. *State v. Fox*, 12th Dist. Fayette No. CA2008-03-009, 2009-Ohio-556, ¶ 37. Any claim of prejudice by a defendant must be balanced against the other evidence in order to determine whether actual prejudice will impact the defendant at trial. Only if actual prejudice will occur at trial will the court then determine whether the reason for

the delay is unjustified. *Id.* A court will not presume prejudice merely because the delay exceeds a particular length of time. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 98; *accord Fox* at ¶ 37.

{¶ 13} Appellant identifies three matters to demonstrate actual prejudice: the length of time it took to indict him, the death of the taxi driver who picked him up on the day after the incident, and the unavailability of video recordings from surveillance cameras at the shopping center. Again, we note that the length of time between the commission of the offense and indictment does not create a presumption of prejudice. *Adams* at ¶ 98. Consequently, the only factors relevant to this claim are the death of the potential witness and the unavailability of video recordings. After review of the record, we find that the evidence offered by appellant to prove actual prejudice is speculative at best.

{¶ 14} First, the death of a potential witness must be considered in relation to the other evidence available at the time of the indictment and the witness's overall relevance to the defense. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105 at ¶ 26. Appellant contends that the taxi driver might have been able to testify as to the victim's demeanor and that his interpretation of her demeanor might indicate that she was not fearful of appellant or displaying the anxiety expected of one recently victimized. While we note that appellant does not need to precisely establish what the witness's testimony will be to demonstrate the requisite prejudicial effect, *Id.* at ¶ 28, appellant's suggested impact of the potential testimony is unconvincing. Appellant relies only on a possibility that the witness was paying attention to the interactions between the victim and appellant. At trial, the victim testified that appellant hugged her prior to getting into the cab, but that she did not reciprocate the hug and merely accepted it to facilitate appellant's peaceful departure. There is no reason to believe the taxi driver remembered this particular customer among other fares he accepted in the days and weeks following this event. The taxi driver's possible observation of the victim came several

hours after the alleged offenses occurred. Potential interpretation of the victim's demeanor would have little weight, and would be speculative, especially when considering the victim herself was subject to cross-examination. The taxi driver's testimony would not minimize or eliminate the impact of the state's evidence and bolster the appellant's defense. Assuming the existence of this potential testimony, it is speculative and only tangentially relevant, therefore appellant cannot demonstrate actual prejudice.

{¶ 15} Second, while it is true that video recordings were no longer available for use at trial, appellant has again failed to demonstrate how the video recordings would have minimized the state's evidence and bolstered his defense. While there was one camera at the front corner of the Kohl's building, it was not directed towards the area where the vehicle was allegedly parked. Thus, no cameras covered the area where the crime occurred. At best, the existence of other surveillance cameras at the shopping center might have filmed a vehicle entering the area about the time specified by the victim. However, defense counsel's closing argument elucidates appellant's defense that the sexual conduct was consensual. Consequently, appellant has failed to establish that the unavailability of any potential surveillance camera video recording caused actual prejudice to his defense.

{¶ 16} The failure to show actual prejudice makes it unnecessary to consider whether the delay was unjustified. *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954 at ¶ 107. Accordingly, appellant's first assignment of error is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED WHEN IT ALLOWED IN STATEMENTS OF THE DEFENDANT'S CRIMINAL HISTORY VIA MEDICAL RECORDS.

{¶ 19} In the second assignment of error, appellant argues that the trial court abused its discretion when it allowed the state to introduce appellant's criminal history and bad prior acts during the testimony of the nurse who conducted the sexual assault medical

examination. Appellant contends this evidence was inadmissible because it constituted hearsay not within an exception provided by Evid.R 803, improper character evidence in violation of Evid.R. 404(B), and the danger of unfair prejudice substantially outweighed the probative value in violation of Evid.R. 403(A).

{¶ 20} At trial, a sexual assault nurse examiner testified about the medical examination she conducted and the medical report she generated. The nurse then read from a portion of the report entitled "assault history" in which the victim described all the events she alleged occurred. The nurse testified that she recorded the victim's statement verbatim. During the testimony, appellant objected when the nurse read the following statement which described the offenses that occurred:

> He asked if I knew why he'd been in prison, and I said no. He said he had 14 felonies and hurt his ex-girlfriend and her boyfriend. He claimed he's killed someone, but on accident.

The trial court overruled the objection. Before the close of the state's case-in-chief, appellant again objected to the admission of this portion of the victim's statement included in the medical report and asked the court to provide a curative instruction to the jury. The court denied the motion for the curative instruction, but decided to redact these sentences from the medical report submitted to the jury.

{¶ 21} A trial court has broad discretion to admit or exclude evidence. *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. Therefore, a reviewing court should not disturb evidentiary decisions unless it finds an abuse of discretion that has created material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62. An abuse of discretion is more than an error of law, it implies that the decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 22} Initially, appellant argues that this statement was inadmissible hearsay. We

disagree. Pursuant to Evid.R. 801(C), hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Thus, an out-of-court statement that has a relevant purpose and is not offered for its truth is not hearsay. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 170. Words constituting conduct or "verbal acts," such as making a threat, are often offered, not to prove the truth of the words, but only to establish the words were spoken. Testimony of this nature is not hearsay. *State v. Lamb,* 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870, ¶ 79; *Wulf v. Bravo Brio Restaurant Group, Inc.*, 12th Dist. Butler No. CA2018-12-238, 2019-Ohio-3434, ¶ 35.

{¶ 23} Appellant's out-of-court statement eluding to his past criminal behavior is not hearsay. The statement was offered to prove appellant's "verbal act" of making the statement. The statement is relevant to the charged offenses because it shows in the totality of the circumstances how the victim was threatened. Such evidence was relevant to proving an element of each offense charged. *See* R.C. 2907.02(A)(2) and 2905.01(A)(4). The state did not offer the statement to prove that appellant actually had prior convictions or committed past violent acts. As such, the statement was not offered for the truth of the matter asserted. Instead, the statement was offered to establish that appellant bolstered his threats to hurt the victim and her children by making her believe he had committed previous criminal offenses. The intimidating statement was made under circumstances to further his threat in order to control the victim and gain compliance in conjunction with the physical force used earlier.

{¶ 24} Next, appellant argues that this evidence violated Evid.R. 404(B). Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to show a person's character or that the person acted in conformity with that character. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 68. This kind of evidence may be admissible if it is offered for purposes other than proving character or conformity with

character, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of a mistake or accident. *Id.* To determine admissibility a court must engage in a three-part analysis: (1) determine whether the evidence is relevant under Evid.R. 401; (2) determine whether the evidence is used for a legitimate purpose and not to show character or conduct in conformity with that character; and (3) determine whether the probative value is substantially outweighed by the danger of unfair prejudice under Evid.R. 403. *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 139. Unfair prejudice exists when the evidence creates an improper basis for a jury decision. *State v. Bowman*, 144 Ohio App.3d 179, 185 (12th Dist.2001). Because this analysis necessarily includes the determination of whether there was unfair prejudice, our resolution on this issue will be dispositive as to appellant's separate claim of an Evid.R. 403(A) violation.

{¶ 25} Here, the statement was relevant to demonstrate that the victim had been threatened and had reason to feel threatened. The state had a legitimate purpose for using the statement by informing the jury that the threatening statement had been made. Furthermore, the statement did not create unfair prejudice because establishing that the victim had been threatened was not an improper matter in the jury's consideration of the charges. Finally, the trial court took measures to lessen any undue emphasis upon this testimony by redacting this statement from the medical report before it was submitted to the jury as an exhibit.

{¶ 26} Therefore, the trial court did not err when it admitted this evidence because it did not constitute hearsay or impermissible character evidence. Accordingly, appellant's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED WHEN IT DENIED A MOTION FOR MISTRIAL AFTER THE JURY SAW THE DEFENDANT IN HANDCUFFS.

{¶ 29} In the third assignment of error, appellant argues the trial court abused its discretion by denying his motion for a mistrial. Specifically, appellant argues that a mistrial was required because several jurors saw appellant in handcuffs through a closed-circuit television feed and this observation caused improper bias.

{¶ 30} It is within the sound discretion of the trial court to deny a motion for a mistrial. *State v. Kaaz*, 12th Dist. Clinton No. CA2016-05-010, 2017-Ohio-5669, ¶ 64. This court has previously held that

> [a] trial court should not grant a motion for a mistrial unless it appears that some error or irregularity has been injected into the proceeding that adversely affects the substantial rights of the accused, and as a result, a fair trial is no longer possible.

*State v. Thornton*, 12th Dist. Clermont No. CA2008-10-092, 2009-Ohio-3685, ¶ 11. This court will not overturn the trial court's decision denying a motion for a mistrial absent finding an abuse of discretion. *Id.*

{¶ 31} A criminal defendant should be free of shackles or restraints in the presence of the jury as part of his due process right to a fair trial. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 45. This is because "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." *Deck v. Missouri*, 544 U.S. 622, 630, 125 S.Ct. 2007 (2005). Nevertheless, this court has held that the right to a fair trial "is not prejudiced by the use of handcuffs or shackles where the jurors' view of the defendant is brief and inadvertent and there is no evidence that the jury was tainted." *State v. Payton*, 12th Dist. Fayette No. CA93-12-028, 1994 Ohio App. LEXIS 3429, *17 (Aug. 8, 1994), citing *State v. Kidder*, 32 Ohio St.3d 279, 286 (1987) (danger of prejudice is slight where a juror's view of defendants in custody is brief, inadvertent and outside of the courtroom).

{¶ 32} Here, upon retiring for final deliberation to the jury room, several of the jurors acknowledged seeing appellant placed in handcuffs through a television monitor

inadvertently left on. The trial court individually questioned each juror regarding what he or she may have seen on the monitor. Several of the jurors saw appellant in handcuffs, while others did not. However, each of the jurors told the court that it had no bearing on his or her verdict. Based on the foregoing, the trial court did not abuse its discretion denying the motion for a mistrial. The observation was brief and the trial court found no juror bias after an individual inquiry. The record does not suggest the jury was in any way tainted in its deliberations and therefore the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

{¶ 33} Accordingly, appellant's third assignment of error is overruled.

{¶ 34} Assignment of Error No. 4:

{¶ 35} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT.

{¶ 36} Assignment of Error No. 5:

{¶ 37} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 38} In the fourth and fifth assignments of error, appellant argues there was insufficient evidence to convict him for rape and the verdict was against the manifest weight of the evidence. Specifically, appellant contends that the state failed to prove that the sexual conduct was compelled by force.

{¶ 39} A sufficiency of the evidence challenge involves the determination of whether the conviction can be supported as a matter of law. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, ¶ 13. The standard of review for a sufficiency of the evidence challenge is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a

reasonable doubt. *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 15.

{¶ 40} On the other hand, a manifest weight of the evidence challenge looks at the inclination of the greater amount of credible evidence to support one side over the other. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must

> look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 42. In its review, an appellate court "must be mindful the trier of fact has the primary role of weighing the evidence and evaluating witness credibility." *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 15. Consequently, a reviewing court will overturn a conviction for a manifest weight of the evidence challenge "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Green,* 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 26.

{¶ 41} This court's determination that a conviction is supported by the manifest weight of the evidence will be dispositive of the sufficiency of the evidence challenge. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 42} To convict appellant for the rape offense, the state had to prove appellant engaged in sexual conduct with the victim by purposely compelling the victim to submit by force or threat of force. R.C. 2907.02(A)(2). Sexual conduct includes fellatio. R.C. 2907.01(A). This court has previously defined fellatio as a sexual act in which the mouth or lips come into contact with the penis. *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 36. A person acts purposefully when it is the person's specific

intention to cause a certain result. R.C. 2901.22(A).

{¶ 43} After our review of the record, the verdict was not against the manifest weight of the evidence. Specifically, the jury heard testimony from the victim about what occurred that night in her vehicle. She testified that appellant repeatedly struck her in the head and about her body as she was driving and then took control of the moving vehicle to drive it through the service entrance of the nearby shopping center and along the backside of the buildings. Appellant then stopped at the side of a building and ordered the victim to sexually stimulate his penis with her mouth. The victim testified that she initially refused but then complied because she was afraid of appellant and did not want to be beaten further. Consequently, this evidence showed that it was appellant's specific intent to compel sexual conduct by his use of force and the threat of further force against the victim.

{¶ 44} In addition to this testimony, the state presented testimony from the investigating police detective, the sexual assault nurse examiner, and the BCI analysts who tested the rape kit specimens. The state also admitted into evidence the certified medical record from the victim's hospital visit, photographs from the medical examination, the rape kit, and the knife used by appellant. The police detective testified that she saw swelling and redness on the victim's face and head and that the victim was visibly "shaken up" and began crying during the interview.

{¶ 45} The nurse testified that she conducted a medical examination on the victim and collected oral and vaginal specimens for a rape kit. During the medical examination, the nurse saw bruising on the victim's head; specifically noting injuries behind the ear, underneath the upper lip, and on the chin. The nurse also took photographs of the victim's injuries. These photographs depict facial swelling and show the bruising on the victim's head as described by the nurse.

{¶ 46} Finally, while it was not disputed that appellant had sexual relations with the

victim, the state provided expert testimony from two BCI laboratory analysts. One BCI analyst testified that semen was identified in the oral specimens. The second BCI analyst testified that she conducted testing on the specimens to determine whether she could identify the source of the semen through the specific deoxyribonucleic acid ("DNA") profile. This analyst confirmed that she found a mixture of DNA profiles in the oral specimens and this mixture contained DNA profiles that matched both the victim and appellant.

{¶ 47} While appellant argues that the sexual conduct was consensual, a verdict is not against the manifest weight because the jury chose to disbelieve the defense theory and instead believe the state's version. *See State v. Anglin*, 12th Dist. Butler No. CA2018-03-058, 2019-Ohio-588, ¶ 30. Furthermore, "it was within the province of the jury, as the trier of fact, to take note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony." *State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 29. In this case, the evidence is such that we do not find that the jury clearly lost its way and created a manifest miscarriage of justice finding appellant guilty of the rape that occurred in the vehicle.

{¶ 48} Our determination that the verdict was not against the manifest weight is also dispositive of the issue that the evidence was sufficient to convict. *Jones*, 2013-Ohio-150 at ¶ 19. Accordingly, appellant's fourth and fifth assignments of error are overruled.

{¶ 49} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.