[Cite as *State v. Mendonca*, 2023-Ohio-1780.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-08-007 |
| | : | O P I N I O N |
| - vs - | | 5/30/2023 |
| | : | |
| MANUEL MENDONCA, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2021-2146

Zac Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

W. Joseph Edwards, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Manuel Mendonca, appeals his conviction in the Brown County Court of Common Pleas after a jury found him guilty of single counts of first-degree felony trafficking in cocaine, first-degree felony possession of cocaine, third-degree felony aggravated trafficking in drugs, and third-degree felony aggravated possession of drugs. For the reasons outlined below, we affirm Mendonca's conviction.

## Facts and Procedural History

{¶ 2}   On August 12, 2021, the Brown County Grand Jury returned an indictment charging Mendonca with single counts of first-degree felony trafficking in cocaine in violation of R.C. 2925.03(A)(2), first-degree felony possession of cocaine in violation of R.C. 2925.11(A), third-degree felony aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), and third-degree felony aggravated possession of drugs in violation of R.C. 2925.11(A).  The indictment also included four major drug offender specifications pursuant to R.C. 2941.1410(A) and two forfeiture specifications in accordance with R.C. 2941.1417(A).  These charges and specifications arose after Officer Sean Waddle with the Fayetteville Police Department conducted a legally permissible traffic stop of Mendonca's rental car after Officer Waddle clocked Mendonca driving 39 mph in a posted 25 mph speed zone while in Fayetteville, Brown County, Ohio on the afternoon of July 30, 2021.

{¶ 3}   Once the traffic stop of Mendonca's rental car was effectuated, Officer Waddle approached the vehicle and contacted Mendonca.  Upon contacting Mendonca, and after asking Mendonca to produce his driver's license and registration, Officer Waddle noticed a large stack of cash located in the car's open glovebox.  Officer Waddle also discovered that Mendonca's out-of-state driver's license was suspended.  Officer Waddle further discovered that the vehicle's registration and proof of insurance were both expired.  Because Mendonca's driver's license had been suspended, and because the vehicle's registration and proof of insurance were both expired, Officer Waddle decided to have Mendonca's rental car towed away from the scene and impounded.  The record indicates that Officer Waddle did this in accordance with Fayetteville's vehicle towing and release policy.

{¶ 4}   Officer Waddle then conducted an inventory search of the vehicle. The record indicates that Officer Waddle also did this in accordance with Fayetteville's vehicle towing and release policy.  Specifically, Section 502.5, which states:

> All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if they are closed and/or locked. Members conducting inventory searches should be as thorough and accurate as practicable in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while the owner is in police custody, to provide for the safety of officers and the public, and to protect the Department against fraudulent claims of lost, stolen or damaged property.

{¶ 5} During the subsequent inventory search of Mendonca's rental car, Officer Waddle discovered a small baggie containing .143 ounces of cocaine located in the vehicle's passenger compartment stuffed in between the car's driver's seat and center console. Upon finding this small baggie of cocaine, Officer Waddle then opened the vehicle's trunk to continue his search. The search of the vehicle's trunk area resulted in Officer Waddle discovering a large, over two-pound brick of cocaine sealed in a brown bag hidden behind an access panel. Following this discovery, Mendonca was placed under arrest and transported to the Brown County Jail by Deputy William Dickman, a deputy with the Brown County Sheriff's Office. Once there, Mendonca was removed from Deputy Dickman's police cruiser and a search of the cruiser's backseat was conducted. This search resulted in the discovery of .5 ounces of methamphetamine located in the Deputy Dickman's police cruiser near the area where Mendonca had been sitting.

{¶ 6} On October 14, 2021, Mendonca filed a motion to suppress. Mendonca advanced several arguments in support of his suppression motion. This included Mendonca's argument that Officer Waddle conducted an unconstitutional inventory search of his vehicle. This was because, according to Mendonca, Fayetteville's vehicle towing and release policy "effectively attempts to eviscerate" the rights guaranteed to him by the United States and Ohio Constitutions to be free from unreasonable searches and seizures. The trial court held a hearing on Mendonca's motion to suppress on November 10, 2021. Officer

Waddle was the only witness who testified at this hearing. As part of this testimony, Officer Waddle was asked upon what he based his decision to have Mendonca's rental car towed. To this, Officer Waddle testified that his decision to tow Mendonca's rental car was based on Mendonca "driving under suspension, as well as the vehicle not having a valid registration," and "no valid insurance."

{¶ 7} On December 10, 2021, the trial court issued a decision denying Mendonca's motion to suppress. In so holding, the trial court stated:

> There has been no showing of a violation of the United States Constitution by the officer's action in stopping the vehicle or in conducting an inventory search when he learned [Mendonca's] operator's license was under suspension.

{¶ 8} The trial court also stated:

> [Officer Waddle] would have been derelict in his duty if he had simply issued a citation for speeding and a license violation. He was correct in not permitting a person whose license was under suspension to just drive away. Had he done so and [Mendonca] had injured someone by his driving, [Officer Mendonca] and his department would face civil liability for those injuries.

{¶ 9} From August 22 to August 25, 2022, the trial court held a three-day jury trial on the matter. After both parties rested, and following the jury's deliberations, the jury returned a verdict finding Mendonca guilty as charged. The next day, the trial court held a sentencing hearing where it sentenced Mendonca to serve a total, aggregate sentence of a mandatory minimum 13 years in prison with a maximum 16-and-one-half-years in prison, less 393 days of jail-time credit. The trial court also ordered Mendonca to pay court costs and notified Mendonca that he would be subject to a mandatory minimum two-year to a maximum five-year postrelease control term. The trial court issued a judgment entry of sentence later that same day. Mendonca filed a notice of appeal on August 31, 2022. Oral argument was held before this court on May 1, 2023. Mendonca's appeal now before this court for decision, Mendonca has raised two assignments of error for review.

**Assignment of Error No. 1:**

{¶ 10} THE TRIAL COURT IMPROPERLY DENIED THE MOTION TO SUPPRESS EVIDENCE BECAUSE THE ARRESTING OFFICER DID NOT ADHERE TO THE FAYETTEVILLE, OHIO POLICE DEPARTMENT'S VEHICLE TOWING AND RELEASE POLICY BY FAILING TO INQUIRE ABOUT THE NATURE OF APPELLANT'S SUSPENSION, AND THE SUBSEQUENT SEARCH WAS PRETEXTUAL FOR AN INVESTIGATORY PURPOSE VIOLATING APPELLANT'S FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

{¶ 11} In his first assignment of error, Mendonca argues the trial court erred by denying his motion to suppress. Under these circumstances, we employ the following standard of review.

*Motion to Suppress Standard of Review*

{¶ 12} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility." *State v. Green*, 12th Dist. Fayette No. CA2021-03-009, 2022-Ohio-101, ¶ 7. "Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Stout*, 12th Dist. Butler No. CA2020-08-085, 2021-Ohio-1125, ¶ 11; *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, ¶ 16. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. This means "the

appellate court must decide the legal questions independently, without deference to the trial court's decision." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14; *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, ¶ 18.

*Mendonca's Three Arguments and Analysis*

{¶ 13} To support his first assignment of error, Mendonca raises three arguments for why he believes the trial court erred by denying his motion to suppress. We address each of Mendonca's three arguments more fully below.

Mendonca's First Argument

{¶ 14} Mendonca initially argues the trial court erred by denying his motion to suppress because Officer Waddle did not follow Fayetteville's vehicle towing and release policy by having his rental car towed without first determining why his driver's license had been suspended. However, upon review, we can find nothing within Fayetteville's vehicle towing and release policy that would require Officer Waddle to learn why Mendonca's driver's license had been suspended prior to having the car towed. We instead find Officer Waddle complied with the procedures outlined in Fayetteville's towing and release policy by towing Mendonca's rental car given that Mendonca's driver's license was suspended and the vehicle's registration and proof of insurance were both expired. Mendonca's rental car was clearly subject to impoundment under these circumstances. In so holding, we agree with the trial court's decision finding Officer Waddle would have been "derelict in his duty" if he had simply issued Mendonca a citation for speeding and a license violation. We also agree with the trial court's decision finding Officer Waddle "was correct in not permitting a person whose license was under suspension to just drive away." This is because, as explained by the trial court, "[h]ad he done so and [Mendonca] had injured someone by his driving, the officer and his department would face civil liability for those injuries." Therefore, Mendonca's first argument lacks merit.

## Mendonca's Second Argument

**{¶ 15}** Mendonca next argues the trial court erred by denying his motion to suppress because Officer Waddle had a pretextual, investigatory purpose for having his rental car towed, thereby subjecting it to an inventory search. However, despite Mendonca's claims, we can find no evidence to support such an assertion. There is, in fact, nothing to suggest Officer Waddle was acting improperly and with some ulterior motive by making the decision to have the Mendonca's rental car towed. The record instead establishes that Officer Waddle was acting in good faith and well within the acceptable bounds set forth by the Fayetteville towing and release policy by having Mendonca's rental car towed rather than having the vehicle sit empty and unattended on the side of the road for an indeterminate amount of time. *See, e.g., State v. Edwards*, 12th Dist. Warren No. CA2022-02-005, 2022-Ohio-2384, ¶ 27 ("finding nothing unreasonable about a police officer exercising his or her discretion to have a vehicle towed out of a restaurant parking lot when the driver of that vehicle cannot legally drive away from the scene, both literally and figuratively, due to the driver having been placed under arrest, handcuffed, and secured in the back of a patrol car for driving with a suspended license"). "An inventory search is reasonable when it is performed in good faith and pursuant to standard police practice, and 'when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile.'" *State v. Resnick*, Butler CA2006-05-118, 2007-Ohio-3717, ¶ 13, quoting *State v. Robinson*, 58 Ohio St.2d 478, 480 (1979). Such is the case here. Therefore, Mendonca's second argument also lacks merit.

## Mendonca's Third Argument

**{¶ 16}** Mendonca lastly argues the trial court erred by denying his motion to suppress because Officer Waddle's search of his rental car's trunk area—specifically, the area behind an access panel between the rental car's trunk liner and the vehicle's outside shell where

the cocaine was hidden—was outside the scope of what could be considered a lawful inventory search. However, while not explicit, Mendonca is essentially arguing that Officer Waddle's inventory search should have been limited to just those designated storage areas within a vehicle that are in plain view. This would include, for instance, his rental car's passenger compartment, glovebox, center console, and trunk. We disagree.

{¶ 17} "[T]he scope of an inventory search is not restricted to items in plain view." *State v. Semenchuk*, 122 Ohio App.3d 30, 40 (8th Dist.1997). The scope of an inventory search is also not restricted to just those areas that are designed and intended to be used as storage. *See, e.g., State v. Johnson*, 10th Dist. Franklin No. 21AP-222, 2022-Ohio-1733, ¶ 61-62 (finding officer did not exceed the scope of a lawful inventory search by opening and reaching into the "space behind the access panel" located on the lower portion of a vehicle's passenger side center console). The scope of an inventory search is in actuality quite broad and, in most instances, includes "the contents of closed containers and compartments so long as the search is administered in accordance with reasonable police procedures." *State v. Early*, 2d Dist. Montgomery No. 19161, 2002-Ohio-4112, ¶ 19. This includes searches of a vehicle's engine compartment and areas within the engine compartment. *Johnson* at ¶ 64, citing *United States v. Lumpkin*, 159 F.3d 983, 987-988 (6th Cir.1998); and *United States v. Torres*, 828 F.3d 1113, 1121 (9th Cir.2016) (upholding inventory search of air filter compartment that was "obviously large enough to hold a firearm, and could be opened by lifting the hood and releasing the latches on the box").

{¶ 18} In this case, Officer Waddle's inventory search of Mendonca's rental car's trunk area, including the area behind the access panel between the rental car's trunk liner and outside shell where the cocaine was hidden, was conducted in accordance with Section 502.5 of the Fayetteville's vehicle towing and release policy. As noted above, that section specifically provides that, "All property in a stored or impounded vehicle shall be inventoried

and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if they are closed and/or locked." Here, the cocaine was hidden behind an access panel in the vehicle's trunk area, a place that falls squarely within what is commonly understood to be a one of the vehicle's many easily accessible compartments. Therefore, because Officer Waddle's inventory search of Mendonca's rental car did not extend beyond the scope of what could be considered a lawful inventory search, Mendonca's third argument likewise lacks merit. Accordingly, finding no merit to any of Mendonca's three arguments raised herein, Mendonca's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 19} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THEREBY VIOLATING APPELLANT'S RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS.

{¶ 20} In his second assignment of error, Mendonca argues the jury's verdicts finding him guilty of both trafficking in cocaine and possession of cocaine were not supported by sufficient evidence and were against the manifest weight of the evidence.[1] We disagree.

*Sufficient Evidence and Manifest Weight of the Evidence Standards*

{¶ 21} "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997). To that end, "[w]hen

---

1. The text of Mendonca's second assignment of error indicates he is just challenging the jury's verdicts as being against the manifest weight of the evidence. However, within the body of his brief, Mendonca also claims the jury's verdicts were not supported by sufficient evidence. Therefore, in order to avoid the potential for a motion for reconsideration, we will analyze Mendonca's second assignment of error under both the sufficiency of the evidence and the manifest weight of the evidence standards of review.

reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. In so doing, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "This test 'requires a determination as to whether the state has met its burden of production at trial.'" *State v. Thompson*, 12th Dist. Butler No. CA2022-09-080, 2023-Ohio-559, ¶ 34, quoting *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34.

{¶ 22} On the other hand, "a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26. To that end, "[a] manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *State v. Dean*, 12th Dist. Madison Nos. CA2021-08-013 and CA2021-08-014, 2022-Ohio-3105, ¶ 62, quoting *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When determining whether a jury's verdict is against the manifest weight of the evidence, this court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses," and "determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. Applying this standard requires this court to function as a "thirteenth juror." *State v. Martin*, Slip Opinion

No. 2022-Ohio-4175, ¶ 26. However, although acting as a "thirteenth juror," this court will overturn a conviction for being against the manifest weight of the evidence only in extraordinary circumstances where the evidence weighs heavily in favor of acquittal. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10, citing *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 23} Given these principles, it is now well established that "[t]he concepts of sufficiency of the evidence and weight of the evidence are legally distinct." *State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 47, citing *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. That is to say, "[a] verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, ¶ 80, citing *State v. Robinson*, 162 Ohio St. 486, 487 (1955). Because of this, "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Perkins*, 12th Dist. Fayette No. CA2009-10-019, 2010-Ohio-2968, ¶ 9. "This is because legally sufficient evidence is required to take a case to the jury." *State v. York*, 12th Dist. Butler No. CA2021-11-147, 2022-Ohio-2457, ¶ 25, citing *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43. Therefore, although challenges to the sufficiency of the evidence and the manifest weight of the evidence require the application of quantitatively and qualitatively different concepts, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19; *State v. August*, 12th Dist. Warren No. CA2018-12-136, 2019-Ohio-4126, ¶ 48.

*Trafficking and Possession of Cocaine*

{¶ 24} The jury found Mendonca guilty of single counts of first-degree felony trafficking in cocaine in violation of R.C. 2925.03(A)(2) and first-degree felony possession

of cocaine in violation of R.C. 2925.11(A). To secure a guilty verdict against Mendonca for trafficking in cocaine, the state was required to prove beyond a reasonable doubt that Mendonca knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed cocaine when he knew or had reasonable cause to believe that the cocaine was intended for sale or resale by either himself or another person. However, to secure a guilty verdict against Mendonca for possession of cocaine, the state was merely required to prove beyond a reasonable doubt that Mendonca knowingly obtained, possessed, or used cocaine. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

*Mendonca's Arguments and Analysis*

{¶ 25} Mendonca argues the jury's verdicts finding him guilty of both trafficking in cocaine and possession of cocaine must be reversed because the state failed to offer any evidence that "connected" him to the over two pounds of cocaine discovered hidden in the trunk area of his rental car. To support this claim, Mendonca notes that he did not own the vehicle in which the cocaine was hidden. Mendonca also notes that none of his "personal items" were located in the trunk near where the brick of cocaine was found. Mendonca's argument is essentially that the jury's verdicts cannot stand because he lacked the requisite knowledge that a two-pound brick of cocaine was hidden in the trunk area of his rental car. However, while Mendonca claims he was unaware that the brick of cocaine was there, hidden in the trunk area of his rental car, whether the defendant knowingly possessed a controlled substance is a question of fact for the trier of fact to decide. *State v. Reyes*, 6th Dist. Wood No. WD-02-069, 2004-Ohio-2217, ¶ 20, citing *State v. Jones*, 1st Dist. Hamilton No. C-880620, 1990 Ohio App. LEXIS 18 (Jan. 10, 1990). Therefore, as the trier of fact in

this case, it was for the jury to decide whether Mendonca knowingly possessed the brick of cocaine hidden in the trunk area of his rental car.

{¶ 26} Moreover, although it would certainly be beneficial if direct evidence existed in every case to prove the defendant was aware of a controlled substance's presence, direct evidence is not necessary. Whether the defendant was aware of a controlled substance's presence can instead be proven through circumstantial evidence. *State v. York*, 12th Dist. Butler No. CA2021-11-147, 2022-Ohio-2457, ¶ 27, citing *State v. Whitehead*, 4th Dist. Scioto No. 20CA3931, 2022-Ohio-479, ¶ 90. "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990). More specifically, "[c]ircumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. Therefore, absent an admission from the defendant, whether the defendant was aware of a controlled substance's presence can only be determined by considering all the surrounding facts and circumstances of the case. *See State v. Hilton*, 12th Dist. Butler No. CA2015-03-064, 2015-Ohio-5198, ¶ 20.

### The Jury's Verdicts are Supported by Sufficient Evidence

{¶ 27} After a thorough review of the record, including the lengthy trial transcript generated in this case, we find the record contains more than enough evidence, albeit circumstantial, to prove Mendonca was aware that there was a two-pound brick of cocaine hidden in the trunk area of his rental car. This includes the evidence that Mendonca admitted to using cocaine while on his travels and that Mendonca had a small baggie of cocaine located with him in the rental car's passenger compartment. This also includes

evidence that Mendonca's cellphone had saved a photograph of cocaine cut up into lines laying on a scale, as well as a text message to Mendonca asking Mendonca if he had an eight-ball of cocaine ready to sell.[2]  This is in addition to the evidence that Mendonca had a large stack of cash in his rental car's glovebox.  Therefore, because there was more than enough evidence to prove Mendonca was aware that there was a two-pound brick of cocaine hidden in the trunk area of his rental car, the jury's verdicts finding Mendonca guilty of trafficking in cocaine and possession of cocaine were supported by sufficient evidence.

<u>The Jury's Verdicts are Not Against the Manifest Weight of the Evidence</u>

{¶ 28} The jury's verdicts finding Mendonca guilty of trafficking in cocaine and possession of cocaine were also not against the manifest weight of the evidence.  The jury in this case heard the testimony and evidence presented at trial and determined that Mendonca's claim alleging that he simply had no idea there was an over two-pound brick of cocaine hidden in the trunk area of his rental car lacked credibility.  A jury's verdict is not against the manifest weight of the evidence simply because the jury believed the testimony offered by the state.  *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.  This is because, as the trier of fact in this case, "the jury was in the best position to judge the credibility of witnesses and the weight to be given to the evidence."  *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24.  Therefore, because the jury's verdicts finding Mendonca guilty of trafficking in cocaine and possession of cocaine were supported by the evidence and not against the manifest weight of the evidence, Mendonca's second assignment of error also lacks merit and is overruled.

---

2. The record indicates that an "eight-ball" is a measurement used when buying cocaine that refers to an eighth of an ounce.

- 14 -

## Conclusion

**{¶ 29}** Finding no merit to either of Mendonca's two assignments of error raised herein, Mendonca's conviction for single counts of first-degree felony trafficking in cocaine, first-degree felony possession of cocaine, third-degree felony aggravated trafficking in drugs, and third-degree felony aggravated possession of drugs is affirmed.

**{¶ 30}** Judgment affirmed.

PIPER and BYRNE, JJ., concur.